# United States Court of Appeals
## For the First Circuit

No. 06-1865

TIMOTHY J. BURKE,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL OF AN ORDER OF THE UNITED STATES TAX COURT

Before

Torruella, <u>Circuit Judge</u>,
John R. Gibson,[*] <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Timothy J. Burke</u>, for appellant.
<u>Jonathan S. Cohen</u>, Attorney, Tax Division, U.S. Department of Justice, with whom <u>Eileen J. O'Connor</u>, Assistant Attorney General, and <u>Regina S. Moriarty</u>, Attorney, Tax Division, were on brief, for appellee.

May 4, 2007

---

[*] Of the Eighth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. On May 14, 2004, Timothy J. Burke received a notice of deficiency from the Internal Revenue Service ("IRS") stating that Burke owed taxes on his distributive share of his partnership's income for 1998. Burke petitioned the tax court for a redetermination of his tax liability, arguing that he was not liable for tax on his 1998 distributive share because the partnership's receipts were placed in escrow. The tax court rejected Burke's argument and granted the IRS's motion for summary judgment. Burke appeals the tax court's ruling. After careful consideration, we affirm.

## I. Background

On October 13, 1993, Burke formed a partnership with Jeffrey Cohen named "Cohen & Burke," agreeing to split the proceeds of the enterprise evenly after allocating a ten percent origination fee to the partner who generated new business. In 1998, a dispute arose between the two partners when Cohen allegedly refused to comply with a superseding partnership agreement that linked the distribution of the partnership's proceeds more tightly to each partner's individual efforts[1] and stole money received by the

---

[1] Burke alleges that on January 1, 1996, Burke and Cohen entered into an oral partnership agreement (the "partnership agreement"), pursuant to which the partnership's income was to be allocated as follows: (1) A guaranteed payment of 10 percent of the gross profits from the tax return preparation business would be paid to the originating partner; (2) 100 percent of the gross profits from legal services attributable to each originating partner was allocated to that partner; (3) the remaining net profits were allocated equally to each partner; and (4) with respect to work

-2-

partnership. As a result of the dispute, Burke filed suit against Cohen in Massachusetts state court on October 4, 1999, alleging breach of fiduciary duty, breach of contract, deceit, and conversion, and requesting an accounting. Cohen and Burke agreed to keep the partnership receipts in an escrow account pending the outcome of the litigation.

Meanwhile, Cohen filed the partnership tax return for 1998 reporting $242,000 in ordinary income, with $121,000 as each partner's distributive share.[2] Burke reported zero as his distributive share of partnership income and filed a notice of inconsistent determination stating that Cohen's partnership tax filing was factually and legally inaccurate.

The Commissioner of Internal Revenue issued Burke a notice of deficiency alleging that Burke had improperly failed to report his distributive share of partnership income on his individual return. Burke timely petitioned the tax court for redetermination of the deficiency, claiming that his distribution

referred from one partner to the other, a referral fee of 33 percent of gross profits from the referred work would be paid to the referring partner. Burke prepared and filed the partnership returns for 1996 and 1997 in accordance with the partnership agreement.

[2] Cohen's position in the state court litigation was that the partnership agreement was not valid and that each partner was entitled to fifty percent of the partnership's profits. On October 16, 2002, the jury found for Burke "with regard to the partnership between January 1, 1996 through December 31, 1998"; i.e., that the income of the partnership should be allocated according to the partnership agreement.

of partnership income from 1998 should not have been taxed that year because the money was being held in escrow and he therefore did not have access to it. The IRS filed a motion for summary judgment arguing that, as a matter of law, a partner's distribution of partnership income was taxable in the year the partnership received the income, regardless of whether the partner actually received the distribution. Burke filed an opposition to the IRS's motion for summary judgment claiming that there were material facts in dispute precluding summary judgment in favor of the IRS and moved for partial summary judgment on the issue of whether he was required to report his distributive share of the 1998 partnership income. The tax court granted summary judgment in favor of the IRS, holding that Burke was required to include his distributive share of partnership income for the 1998 taxable year even though he had not yet received that distribution.

## II. __Discussion__

We review the award of summary judgment __de novo__. __State Police Ass'n__ v. __Comm'r__, 125 F.3d 1, 5 (1st Cir. 1997).

### A. Burke's 1998 Taxable Income

Section 701 of the Internal Revenue code provides that "[a] partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." 26 U.S.C. § 701. Section 703(a) provides that "[t]he

taxable income of a partnership shall be computed in the same manner as in the case of an individual."  Id. § 703(a).

Burke argues that his distribution of partnership income for 1998 should not have been taxed that year because that income was (and remains) "frozen" in an escrow account, such that neither he, nor his partner, has access to the income.  In support of his argument, Burke cites several cases (none of which deal with partnership or partner taxation) that hold that an individual taxpayer must only include income to which he has a claim of right.  See, e.g., N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 422 (1932) (holding that profits earned by taxpayer in a given year are not taxable income until taxpayer "first became entitled to them and when [taxpayer] actually received them").

Citing § 703's language that "[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual," Burke contends that under these cases, the partnership did not earn taxable income in 1998 because "the restriction of funds . . . defers the recognition of income at the partnership level, as it does for individuals, until the restriction is removed."

But § 703 does not help Burke.  A self-imposed restriction on the availability of income cannot legally defer recognition of that income.  See Reed v. Comm'r, 723 F.2d 138, 143 (1st Cir. 1983) ("[A] 'self-imposed limitation' created by the

[taxpayer] is legally ineffective to shift taxability on escrowed funds from one year to the next."). The partnership received the money free and clear in 1998. It was the individual partners, Burke and Cohen, who chose to place the funds in escrow -- not the partnership's clients or other persons owing the partnership money. Compare with id. at 142 ("As long as the deferred payment agreement is binding between the parties and is made prior to the time when the [taxpayer] has acquired an absolute and unconditional right to receive payment, then the . . . taxpayer is not required to report the . . . income until he actually receives [it]."). Thus, Burke's contentions have only to do with the individual partners' access to the funds after they were placed in escrow and not the partnership's access to them.

It is well settled that partners' distributions are taxed in the year the partnership receives its earnings, regardless of whether the partners actually receive their share of partnership earnings: "Few principles of partnership taxation are more firmly established than that no matter the reason for nondistribution each partner must pay taxes on his distributive share." United States v. Basye, 410 U.S. 441, 454 (1973); see also Heiner v. Mellon, 304 U.S. 271, 281 (1938) ("The tax is . . . imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not

material."); 26 C.F.R. § 1.702-1 (providing that a partner must separately account for his distributive share of partnership income "whether or not distributed"). Consistent with this long-standing principle, courts have uniformly held that partners must currently recognize in their individual incomes their proportionate shares of partnership income, even if the partnership income was not actually distributed to them for any reason, including disputes, consensual arrangements, ignorance, concealment, or force of law. See, e.g., Heiner, 304 U.S. at 280-81 (holding partners liable for tax on their distributive share of liquidating partnership's net profits in the year earned, even though proceeds from the sale of partnership assets were not distributed until a year later); Comm'r v. Goldberger's Estate, 213 F.2d 78, 81-82 (3d Cir. 1954) (holding taxpayer liable for distributive share of profits earned by joint venture, even though he was ignorant of the full extent of the profits and did not receive his distributive share until years later);[3] Earle v. Comm'r, 38 F.2d 965, 967-68 (1st Cir. 1930) (requiring members of partnership which was dissolved during taxable period by death of one of the partners to report their respective proportions of partnership income on their individual

---

[3] Under 26 U.S.C. § 7701(a)(2), the term "partnership" includes a "joint venture . . ., through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a . . . joint venture."

income tax return, whether distributed or not).  Thus, Burke was required to report his distributive share of the partnership's income in 1998, even if he had not yet received it.

**B. Facts in Dispute**

Burke also argues that the tax court erred in granting summary judgment in favor of the IRS because there were facts in dispute which may affect the outcome of the lawsuit.  He claims that the court incorrectly assumed Burke's taxable income for 1998 was "approximately $151,000," when, in fact, that number was disputed on the ground that it included money that Cohen had stolen from the partnership.

The IRS states (and the tax court found) that the IRS used Burke's own calculation of the partnership's gross receipts for 1998, <u>subtracting from that number Burke's calculations of the allegedly stolen funds</u>, in arriving at Burke's taxable income for 1998.  This assertion is supported by the record and Burke does not directly contest it.  Instead, he asserts -- without citing to the IRS's calculations -- that <u>Cohen's tax filings</u> were inaccurate because he had included the allegedly stolen partnership income in the calculation of the partnership's gross receipts.  Perhaps there would have been a genuine issue of material fact if, in fact, the IRS had used Cohen's tax filings to arrive at the $151,000 figure for 1998 taxable income to Burke, but the IRS did not.  The IRS

used Burke's calculations of partnership income. Accordingly, the facts to which Burke refers are not actually in dispute.

### III. Conclusion

For the reasons stated above, we affirm the tax court's order and opinion.

**Affirmed**.